SBK:WES
F.#2010R01379

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

GUSTAVE DRIVAS,
JONATHAN WAHL,
YURI KHANDRIUS,
MAKSIM SHELIKHOV,
IRINA SHELIKHOVA,
SERGEY ZHAMARYAN,
ELENA GIRENKO,
    also known as "LENA,"
KATHERINA KOSTIOCHENKO,
    also known as "KATYA,"
SERGEY V. SHELIKHOV,
LEONID ZHELEZNYAKOV,
    also known as
    "LYONYA" and "LENNY," and
VERONYKHA TCHERNYTCHENKO,

           Defendants.

- - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
982(a)(7), 982(b), 1347, 1349,
2 and 3551 et seq.)

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.   Background

    A.   The Medicare Program

       1.  The Medicare program ("Medicare") was a federal health care program providing benefits to individuals aged 65 and over and to certain disabled persons.  Medicare was administered

by the Centers for Medicare and Medicaid Services, a federal
agency under the United States Department of Health and Human
Services.  Individuals who received benefits under Medicare were
referred to as Medicare "beneficiaries."  The physician who
provided a service to a beneficiary or ordered that a service be
provided to a beneficiary was referred to as a "rendering
physician."

2.  Medicare was a "health care benefit program," as
defined by Title 18, United States Code, Section 24(b).

3.  Medicare included coverage under several
components, including hospital insurance ("Part A") and medical
insurance ("Part B").  Medicare Part B covered the costs of
physicians' services and outpatient care, including physical
therapy and diagnostic tests.  Medicare Part B covered these
costs only if, among other requirements, they were medically
necessary and ordered by a physician.

4.  Medical providers that were certified to
participate in Medicare, whether clinics or individuals, were
assigned a provider identification number ("PIN") for billing
purposes.  A medical provider rendering a service was required to
use its assigned PIN when submitting a claim for reimbursement to
Medicare.

2

5.  Medical providers were permitted to submit claims to Medicare only for services they actually rendered and were required to maintain patient records verifying the provision of services.

6.  To receive reimbursement for a covered service from Medicare, a medical provider was required to submit a claim, either electronically or in writing.  The claim had to include information identifying the medical provider, the rendering physician, the patient and the services rendered.  By submitting the claim, the provider was certifying, among other things, that the services were rendered to the patient and were medically necessary.

7.  Medicare provider claims included "billing codes," which were numbers that referred to specific descriptions of medical services.  Medicare reimbursed medical providers a set fee for many billing codes.

B.    Relevant Entities and the Defendants

(1)  The Medical Clinics

8.  Bay Medical Care PC ("Bay Medical") was a New York State corporation doing business in Brooklyn, New York.  Bay Medical was certified to participate in the Medicare program. Bay Medical purported to provide, among other things, physical therapy, nerve conduction tests, Doppler echocardiography and allergy services to Medicare beneficiaries.

3

9.   SVS Wellcare Medical PLLC ("SVS") was a New York State corporation doing business in Brooklyn, New York.  SVS was certified to participate in the Medicare program.  SVS purported to provide, among other things, physical therapy, nerve conduction tests, vestibular function tests, allergy services, sleep studies and vitamin infusions to Medicare beneficiaries.

10.   SZS Medical Care PLLC ("SZS") was a New York State corporation doing business in Brooklyn, New York.  SZS was certified to participate in the Medicare program.  SZS purported to provide, among other things, physical therapy, nerve conduction tests, vestibular function tests, allergy services, sleep studies, vitamin infusions, lab services, podiatry services and urology services to Medicare beneficiaries.

11.   At various times, Bay Medical, SVS and SZS (collectively, the "Medical Clinics") were located at 7612 Bay Parkway, Brooklyn, New York, 7616 Bay Parkway, Brooklyn, New York, and 8686 Bay Parkway, Brooklyn, New York (the "Medical Plaza").

(2)   The Defendants

12.   The defendant GUSTAVE DRIVAS was the owner and President of Bay Medical, a managing employee of SVS and an owner of SZS.  DRIVAS was also a rendering physician at the Medical Clinics.

4

13.   The defendant JONATHAN WAHL was a rendering physician at the Medical Clinics.

14.   The defendant YURI KHANDRIUS was an employee at the Medical Clinics.

15.   The defendant MAKSIM SHELIKHOV was an authorized signatory on an SZS bank account into which Medicare reimbursed claims.

16.   The defendant IRINA SHELIKHOVA was an authorized signatory on bank accounts of the Medical Clinics into which Medicare reimbursed claims.

17.   The defendant SERGEY ZHAMARYAN was an owner of SZS.   ZHAMARYAN was also an authorized signatory on SZS bank accounts into which Medicare reimbursed claims.   ZHAMARYAN managed operations of the Medical Clinics at the Medical Plaza. Among other things, ZHAMARYAN managed the vehicles, drivers and dispatchers used to transport beneficiaries to and from the Medical Plaza, and endorsed checks to rendering physicians and employees at the Medical Plaza.

18.   The defendant ELENA GIRENKO, also known as "LENA," was an employee at the Medical Clinics.

19.   The defendant KATHERINA KOSTIOCHENKO, also known as "KATYA," was an employee at the Medical Clinics.

20.   The defendant SERGEY V. SHELIKHOV was an employee at the Medical Clinics.

21.    The defendant LEONID ZHELEZNYAKOV, also known as "LYONYA" and "LENNY," was an employee at the Medical Clinics.

22.    The defendant VERONYKHA TCHERNYTCHENKO controlled all scheduling of patient appointments for medical services at the Medical Plaza.

II.    The Fraudulent Scheme

23.    From approximately March 2005 to July 2010, the defendants GUSTAVE DRIVAS, JONATHAN WAHL, YURI KHANDRIUS, MAKSIM SHELIKHOV, IRINA SHELIKHOVA, SERGEY ZHAMARYAN, ELENA GIRENKO, also known as "LENA," KATHERINA KOSTIOCHENKO, also known as "KATYA," SERGEY V. SHELIKHOV, LEONID ZHELEZNYAKOV, also known as "LYONYA" and "LENNY," and VERONYKHA TCHERNYTCHENKO, together with others, executed a fraudulent scheme in which they paid cash kickbacks to Medicare beneficiaries to induce those beneficiaries to receive unnecessary physicians' services, physical therapy and diagnostic tests.  The defendants also created fraudulent medical records for these beneficiaries which, inter alia, reflected that the beneficiaries received medical services that were never provided and falsely indicated that prescribed treatments were medically necessary when, in reality, they were not.  The defendants then caused the submission of false and fraudulent claims to Medicare on behalf of the Medical Clinics and rendering physicians that sought reimbursement for the services listed in the fraudulent medical records.  As a result of these fraudulent

6

claims, the Medical Clinics submitted more than $71 million in fraudulent claims to Medicare. Medicare reimbursed approximately $47 million of these claims to the Medical Clinics, all of which they were not lawfully entitled to receive. The defendants thereafter deposited the proceeds of these reimbursement payments in the bank accounts of shell companies. The defendants used these shell companies to hide the fact that they used the proceeds from the reimbursement payments to pay cash kickbacks to the Medicare beneficiaries who participated in the scheme.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

24. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

25. In or about and between March 2005 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GUSTAVE DRIVAS, JONATHAN WAHL, YURI KHANDRIUS, MAKSIM SHELIKHOV, IRINA SHELIKHOVA, SERGEY ZHAMARYAN, ELENA GIRENKO, also known as "LENA," KATHERINA KOSTIOCHENKO, also known as "KATYA," SERGEY V. SHELIKHOV, LEONID ZHELEZNYAKOV, also known as "LYONYA" and "LENNY," and VERONYKHA TCHERNYTCHENKO, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud one or more health care benefit programs, specifically Medicare, and to obtain, by means of materially false and

7

fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Conspiracy to Pay Health Care Kickbacks)

26. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as though fully set forth in this paragraph.

27. In or about and between March 2005 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GUSTAVE DRIVAS, JONATHAN WAHL, YURI KHANDRIUS, MAKSIM SHELIKHOV, IRINA SHELIKHOVA, SERGEY ZHAMARYAN, ELENA GIRENKO, also known as "LENA," KATHERINA KOSTIOCHENKO, also known as "KATYA," SERGEY V. SHELIKHOV, LEONID ZHELEZNYAKOV, also known as "LYONYA" and "LENNY," and VERONYKHA TCHERNYTCHENKO, together with others, did knowingly and willfully conspire to offer and pay cash kickbacks, directly and indirectly, overtly and covertly, to Medicare beneficiaries to induce those beneficiaries to refer other Medicare beneficiaries to Bay Medical, SVS and SZS for the furnishing and arranging for the furnishing of items and services

8

for which payment may be made in whole and in part under
Medicare, and to induce Medicare beneficiaries to purchase,
lease, order and arrange for and recommend purchasing, leasing
and ordering any good, service and item for which payment may be
made in whole and in part under Medicare, contrary to Title 42,
United States Code, Section 1320a-7b(b)(2).

28.   In furtherance of the conspiracy and to effect its
objectives, within the Eastern District of New York and
elsewhere, the defendants GUSTAVE DRIVAS, JONATHAN WAHL, YURI
KHANDRIUS, MAKSIM SHELIKHOV, IRINA SHELIKHOVA, SERGEY ZHAMARYAN,
ELENA GIRENKO, also known as "LENA," KATHERINA KOSTIOCHENKO, also
known as "KATYA," SERGEY V. SHELIKHOV, LEONID ZHELEZNYAKOV, also
known as "LYONYA" and "LENNY," and VERONYKHA TCHERNYTCHENKO,
together with others, committed and caused to be committed, among
others, the following:

<u>OVERT ACTS</u>

a.   On or about December 10, 2009, the defendant
     ELENA GIRENKO offered and paid cash kickbacks
     to a confidential source ("CS-1") to induce
     CS-1 to receive medical services at the
     Medical Clinics, to induce CS-1 to refer
     other Medicare beneficiaries to receive
     medical services at the Medical Clinics and
     for past visits by CS-1 that resulted in
     fraudulent bills to Medicare.

b.   On or about December 23, 2009, the defendant
     SERGEY V. SHELIKHOV told a confidential
     source ("CS-2") that CS-2 needed to visit the
     Medical Clinics a minimum of six times to
     receive a kickback payment.

c.  On or about December 30, 2009, the defendant LEONID ZHELEZNYAKOV told CS-2 that CS-2 needed more than four visits to be placed on a list of individuals who would receive kickback payments.

d.  On or about January 13, 2010, the defendant VERONYKHA TCHERNYTCHENKO told CS-2 to sign in with the defendant LEONID ZHELEZNYAKOV to receive a kickback payment.

e.  On or about January 13, 2010, the defendant VERONYKHA TCHERNYTCHENKO accompanied CS-2 to a room inside the Medical Plaza where kickbacks were paid to beneficiaries (the "Kickback Room") and handed CS-2's medical chart to the defendant ELENA GIRENKO.

f.  On or about January 13, 2010, the defendant ELENA GIRENKO offered and paid cash kickbacks to CS-2 to induce CS-2 to receive medical services at the Medical Clinics and for past visits to the Medical Clinics by CS-2 that resulted in fraudulent bills to Medicare.

g.  On or about March 25, 2010, the defendant KATHERINA KOSTIOCHENKO offered and paid cash kickbacks to CS-2 for past visits to the Medical Clinics by CS-2 that resulted in fraudulent bills to Medicare.

h.  On or about May 3, 2010, the defendant ELENA GIRENKO offered and paid cash kickbacks to a Medicare beneficiary whose identity is known to the Grand Jury ("Jane Doe 1") to induce Jane Doe 1 to receive medical services at the Medical Clinics and for past visits to the Medical Clinics by Jane Doe 1 that resulted in fraudulent bills to Medicare.

i.  On or about May 7, 2010, the defendant KATHERINE KOSTIOCHENKO offered and paid cash kickbacks to a Medicare beneficiary whose identity is known to the Grand Jury ("Jane Doe 2") to induce Jane Doe 2 to receive medical services at the Medical Clinics and

for past visits to the Medical Clinics by Jane Doe 2 that resulted in fraudulent bills to Medicare.

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

COUNT THREE
(Health Care Fraud)

29.  The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

30.  In or about and between March 2005 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GUSTAVE DRIVAS, JONATHAN WAHL, YURI KHANDRIUS, MAKSIM SHELIKHOV, IRINA SHELIKHOVA, SERGEY ZHAMARYAN, ELENA GIRENKO, also known as "LENA," KATHERINA KOSTIOCHENKO, also known as "KATYA," SERGEY V. SHELIKHOV, LEONID ZHELEZNYAKOV, also known as "LYONYA" and "LENNY," and VERONYKHA TCHERNYTCHENKO, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicare and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and

11

under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

31.   The United States hereby gives notice to the defendants charged in Counts One through Three, upon their conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offenses to forfeit any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to, the following:

a.   approximately $526,229.96 seized from TD Bank Account No. 4245835545, held in the name of SZS Medical Care PLLC, and all proceeds traceable thereto;

b.   approximately $2,073,530.01 seized from Bank of America Account No. 483027813428, held in the name of SZS Medical Care PLLC, and all proceeds traceable thereto;

c.   approximately $727,000.00 seized from JPMorgan Chase Account No. 793100249, held in the name of Elena Girenko, and all proceeds traceable thereto;

12

        d.    approximately $16,960.32 seized from JPMorgan Chase Account No. 798506416, held in the name of Elena Girenko and Aleksandr Spektor, and all proceeds traceable thereto;

        e.    approximately $232,000 seized from TD Bank Account No. 4248689907, held in the name of Irina Shelikhova, and all proceeds traceable thereto;

        f.    approximately $24,048.88 seized from TD Bank Account No. 7924571842, held in the name of Jonathan Wahl and/or Wahl Medical PC, and all proceeds traceable thereto;

        g.    approximately $1,344,375.33 seized from National Government Services that would have otherwise been paid to SZS Medical Care PLLC, and all proceeds traceable thereto;

        h.    approximately $41,000 in U.S. currency seized from 8686 Bay Parkway, Brooklyn, New York on or about July 16, 2010, and all proceeds traceable thereto;

        i.    any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 67 Nicolosi Loop, Staten Island, New York, and all proceeds traceable thereto;

        j.    any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 8686 Bay Parkway, Apt. 2C, Brooklyn, New York, and all proceeds traceable thereto;

13

k.   any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 220 Tennyson Drive, Staten Island, New York, and all proceeds traceable thereto;

l.   any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 480 Tennyson Drive, Staten Island, New York, and all proceeds traceable thereto;

m.   any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 3149 Emmons Avenue, Unit R1, Brooklyn, New York, and all proceeds traceable thereto;

n.   any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 3149 Emmons Avenue, Unit R2, Brooklyn, New York, and all proceeds traceable thereto; and

o.   any and all right, title and interest in the real property and appurtenances, improvements, fixtures, attachments, and easements known as 3149 Emmons Avenue, Commercial Unit, Brooklyn, New York, and all proceeds traceable thereto.

32.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

14

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Sections 982(a)(7) and 982(b))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

15