UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GUSTAVE DRIVAS,

                               Petitioner,

- against -

UNITED STATES OF AMERCA,

                               Respondent.
------------------------------------------------------------x

**OPINION AND ORDER**
15-cv-2327 (NG)
10-cr-771 (NG)

**GERSHON, United States District Judge:**

On September 26, 2013, petitioner, Gustave Drivas, was convicted after a jury trial of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and one count of health care fraud, in violation of 18 U.S.C. § 1347. Petitioner was sentenced to 151 months' incarceration. Petitioner was also sentenced to a three-year term of supervised release, forfeiture in the amount of $511,000, restitution in the amount of $50,943,386 and a special assessment of $200. Drivas now brings a 28 U.S.C. § 2255 petition challenging his convictions, objecting to the court's evidentiary rulings at trial and the jury instructions, and claiming ineffective assistance of counsel. In addition to a response from the government, at my request, Drivas's trial attorneys, Nicholas J. Pinto, Gerald DiChiara, and Louis Diamond, submitted a joint affirmation in response to Drivas's petition. Drivas submitted a reply to that joint affirmation. I requested supplemental papers from trial counsel and the government on a specific issue, and in response trial counsel and the government filed additional papers. For the reasons stated below, Drivas's § 2255 petition is DENIED. A hearing with regard to counsel's alleged ineffectiveness is not required.

## BACKGROUND

Petitioner is a doctor who, along with several co-conspirators, submitted fraudulent claims to Medicare and received fraudulent proceeds of approximately $50 million. The claims were submitted by clinics in Brooklyn that billed Medicare under three different corporate names, Bay

Medical Care PC, SVS Wellcare Medical PLLC, and SZS Medical Care PLLC (together the "Bay Medical clinics"). Petitioner was listed as an owner of Bay Medical, the "contracted managing employee" at SVS Wellcare, and an owner of SZS Medical Care. Petitioner rarely, if ever, treated patients at the clinics, but his Medicare billing number was used to bill over $20 million to Medicare, with a significant portion of those claims stating that petitioner had personally provided or overseen the provision of care at the Bay Medical clinics.

Prior to petitioner's indictment, in January of 2007, the Bay Medical clinics were involved in litigation with Auto One Insurance over claims made by the clinics. Drivas attempted to avoid liability in that litigation by signing an affidavit (the "January 31, 2007 affidavit") that evidenced his lack of knowledge relevant to the claims there, but in so doing acknowledged facts relevant to his knowledge in this criminal case. A partially redacted version of this affidavit was admitted as evidence during petitioner's criminal trial as Exhibit GX-46A.

After his convictions, petitioner filed an appeal to the Second Circuit, claiming that (1) the evidence was insufficient to sustain his convictions; (2) the jury was improperly charged on conscious avoidance; (3) the decision to admit the redacted affidavit was in error; and (4) his sentence was procedurally and substantively unreasonable. The Circuit rejected all of petitioner's arguments and affirmed the convictions via summary order. *United States v. Wahl*, 563 Fed. Appx. 45 (2d Cir. 2014).

Drivas now argues that his trial counsel was ineffective by: (1) ignoring Drivas's instruction to investigate the January 31, 2007 affidavit, which he informed them was fraudulent; (2) failing to obtain a handwriting expert to provide testimony about whether certain documents were actually signed by Drivas; (3) failing to cross-examine co-defendant Elena Girenko; and (4) not allowing Drivas to testify on his own behalf. Drivas also argues that one of his trial attorneys,

2

Louis Diamond, was "obviously in an impaired state" during Mr. Diamond's cross-examination of a government witness, co-defendant Dr. Jonathan Wahl.[1]

## Trial Counsels' First Affirmation

In a joint affirmation responding to Drivas's allegations, all three trial counsel state that Drivas never informed them that the January 31, 2007 affidavit was a wholesale fabrication and that he admitted to signing some form of the affidavit but contended it had been altered after he signed it. Additionally, another affidavit by Drivas, prepared in 2008 by his counsel in a civil matter, disputed certain aspects of the 2007 affidavit but did not allege it to be a wholesale fabrication, nor did it state, as Drivas does now in his petition, that it could not be authentic because it references a corporation that was not yet incorporated on the date it was purportedly signed.

With respect to Elena Girenko, she was not called by the government and no opportunity for cross-examination ever arose. Interpreting Drivas's argument to be that his defense counsel should have called her as a witness, counsel state that they made a tactical decision not to do so after reading her 3500 material. They did not elaborate on what, specifically, in the 3500 material led them to decide not to call her.

---

[1] Drivas also argues that the jury was improperly charged on conscious avoidance and that the redacted affidavit should not have been admitted into evidence under Fed. R. Ev. 408. As noted above, those arguments were made and rejected on direct appeal and Drivas is procedurally barred from raising them on collateral review. *Cabrera v. United States*, 972 F.2d 23, 33 (2d Cir. 1992). Finally, Drivas argues that I improperly failed to instruct the jury on the significance of 18 U.S.C. § 201(c)(3) (prohibiting bribery of witnesses) as it pertains to Dr. Wahl, a cooperating government witness who received leniency from the government in exchange for his cooperation. The instruction Drivas believes should have been given would have been erroneous because a cooperation agreement with the government does not constitute bribery of a witness. *United States v. Stephenson*, 183 F.3d 110, 118 (2d Cir. 1999) ("We . . . hold that 18 U.S.C. § 201(c)(2) does not apply to the United States or to any Assistant United States Attorney acting within his or her official capacity"); *United States v. McFadden*, 2017 WL 1540846 at *3 (2d Cir. May 1, 2017) (summary order).

Counsel state that their decision not to call a handwriting expert was a tactical one, because they were able to establish through other witnesses that many of the applications submitted in the clinic with Drivas's signature were, in fact, not signed by Drivas. Witnesses testified that people in the clinic would sign Drivas's name to documents. Having a handwriting expert confirm that some of the signatures were not Drivas's would have been redundant. There was also, however, a "large amount of evidence" tying Drivas through authentic signatures of his in the initial Medicare application and some subsequent applications to Medicare. Therefore, because the government could "parade a plethora of documents that were, in fact, signed by Dr. Drivas," a handwriting expert would have been counterproductive.

Defense counsel further state that, while they discussed the dangers of testifying with Drivas at length, and advised him not to testify as [defense counsel] believed it would not be in his best interest, it was Drivas who, in the end, decided not to testify.

Finally, while defense counsel acknowledged that Mr. Diamond fell ill during the cross-examination of a witness, Mr. DiChiara was aware of Mr. Diamond's condition, and was prepared to go forward if Mr. Diamond had difficulties. Mr. DiChiara did in fact complete the examination of the witness after Mr. Diamond could not continue. Defense counsel also point out that the witness in question, Dr. Wahl, testified as to Drivas's connection to the kickback scheme, which was the count of the indictment as to which Drivas was found not guilty.

### **Drivas's Response and My Request for Supplemental Papers**

Drivas was afforded an opportunity to respond to counsels' affirmation and did so on July 5, 2017. Drivas disputed some of counsels' assertions and stated that he could not respond to others without additional documents. Specifically, Drivas could not respond to counsels' representation that their decision not to call Elena Girenko was based on a review of her 3500 material because

4

he was not in possession of that material. Drivas had stated in his petition that Girenko was caught on a wiretap asking "Why did they arrest Dr. Drivas? Dr. Drivas has no idea what was being done, he was clueless. Why didn't they arrest Dr. Rakber? He is the one who ran everything." I agreed that, given the seriousness of the allegation that a leader of the conspiracy made a statement exonerating him of knowledge of the conspiracy, the simple assertion that the decision had a basis in Girenko's 3500 material, without explanation or production of that material, was insufficient. I therefore requested a more specific explanation from defense counsel and the government. (Docket No. 21.)

On October 5, 2017, Drivas's trial counsel filed their supplemental affirmation. Counsel specifically reference summaries of recorded telephone calls to which Girenko was a party and provide the supporting documentation. In those calls, Girenko makes multiple statements which inculpate Drivas in the fraud. They also point to multiple credibility issues with Girenko as a witness, characterizing her as "unstable, angry, [and] drunk" during many of the calls.

On October 6, 2017, the government filed a supplemental letter stating that the statement by Girenko to which Drivas refers, when placed in context, was not exonerating of Drivas. The government states that, while Girenko did ask why Drivas was arrested, she was asking why *only* two doctors were arrested instead of many more, and clarifies that Girenko was recorded stating that all the doctors knew they were engaged in a fraud. The government references the portions of the 3500 material that trial counsel had submitted to support its position.

## DISCUSSION

A prisoner in custody serving a sentence for a federal offense may "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).

5

In deciding a § 2555 motion, the district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b). To be entitled to a hearing with respect to claims of ineffective assistance of counsel, petitioner "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir.2009) (internal quotation marks omitted). And, where, as here, a petitioner is appearing *pro se*, the court must construe his habeas petition liberally and interpret it to raise the strongest arguments that it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 84 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001).

Although the court must "view[] the evidentiary proffers, where credible, and record in the light most favorable to the petitioner," the court "need not assume the credibility of factual assertions... where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214. Where "material facts are in dispute," the court should "usually" hold a hearing, and make relevant findings of fact. *Id.* However, "when the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner." *Id.* Instead, a district court may "'choose a middle road'" by soliciting affidavits to expand the record, if the judge determines that live testimony "would add little or nothing to the written affidavits." *Foster v United States*, 581 F. App'x 105, 106 (2d Cir. 2014) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)). The court may properly choose to credit trial counsel's sworn statements over a petitioner's "self-serving and improbable assertions" in dismissing the petition. *Chang*, 250 F.3d at 86 (holding that trial court did not err in crediting counsel's "eminently credible" and "detailed" affidavit over petitioner's assertions); *see*

6

*also Foster*, 581 F. App'x at 106 ("[A]n affidavit from the petitioner's trial counsel credibly describing the circumstances concerning appellant's failure to testify... was sufficient to support dismissal of the petition."); *Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (internal quotation marks omitted).

### Drivas's Claims of Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court's review of counsel's performance must be "highly deferential," and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Further, "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To show prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A.  **Failure to Investigate the Affidavit**

Petitioner's allegation that his defense counsel did not investigate the January 31, 2007 affidavit is belied by the record. The admissibility of the affidavit was litigated extensively prior to, and at, the trial, and the affidavit was admitted in redacted form and for a limited purpose at trial. Defense counsel credibly state in their affirmation that they questioned Drivas at length as to his knowledge of the affidavit and he never denied signing some version of it; he told them it was altered after he signed it and that the date was wrong. They further state that at no time did Drivas advise them that any of the corporations named in the affidavit were not in existence on the date it

was purportedly signed, nor was that contention made in the affidavit signed by Drivas in a subsequent civil proceeding. Based on counsel's affirmation and on the extent of the litigation surrounding the affidavit, I find that counsel adequately investigated the affidavit and relied on Drivas's representations regarding it. Counsel were therefore not ineffective.

### B. Failure to Obtain a Handwriting Expert

First, contrary to the government's contention, Drivas is not procedurally barred from making this argument by the Circuit's holding that the evidence was sufficient to sustain the conviction. Petitioner is arguing that his attorneys should have presented additional, exonerating evidence, which could have changed the Second Circuit's analysis. Were they in fact ineffective in failing to do so, Drivas would be entitled to a new trial.

The decision to call or not call an expert witness, however, is exactly the sort of decision that falls within counsel's overall trial strategy. "A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that we are reluctant to disturb" so long as it is "grounded in some strategy that advances the client's interests." *Eze v. Senkowski*, 321 F.3d 110, 129 (2d Cir. 2003).

Drivas cites *United States v. Tarricone*, 996 F.2d 1414 (2d Cir. 1993), where the Circuit held that a hearing was necessary to determine whether the failure to call a handwriting expert amounted to ineffective assistance of counsel. *Tarricone*, 996 F.2d at 1418–19. But, unlike *Tarricone*, no hearing is necessary here because counsel have submitted an affirmation explaining their strategic reasons for not calling such a witness, which I find satisfactory. Witnesses testified that many of the documents were not signed by Drivas, so a handwriting expert was not necessary as to those signatures, and many of the documents were in fact signed by Drivas, so a handwriting expert would have been counterproductive as to those documents.

Drivas points to specific government exhibits—2C, 21-B, and 2E—that he contends a handwriting expert would have been able to testify he did not sign.[2] Notably, Drivas does not contend that he did not sign *any* of the documents introduced into evidence, or that none of the signatures that were purportedly his were genuine. I therefore credit defense counsel's assertion that, after much discussion, they made the tactical decision not to call a handwriting expert because the expert would have confirmed that a number of the government's documents were in fact signed by Drivas, potentially harming his case more than it would have helped. Under the circumstances, counsel's strategic decision was reasonable.

C.  **Failure to Call Elena Girenko**

Elena Girenko was a co-defendant charged with being one of the two leaders of the Medicare fraud scheme. She pled guilty pursuant to a cooperation agreement but was not called as a witness by the government. Drivas argues that she was caught on a wiretap after Drivas's arrest stating, "Why did they arrest Dr. Drivas? Dr. Drivas has no idea what was being done, he was clueless. Why didn't they arrest Dr. Rakber? He is the one who ran everything." (Petr. Mem. at 7; Petr. Reply Mem. at 4.) For the reasons set forth in trial counsel's second affirmation, including the annexed exhibits, I find that counsel's decision not to call Elena Girenko as a witness for the defense was not ineffective. Counsel's affirmation is very detailed and supported by the material it cites. The affidavit and exhibits indicate that Elena Girenko made multiple recorded statements inculpating Drivas in the conspiracy, and also supports counsels' assertion that she would have been unreliable as a witness. The government's submission cites to the same material and provides

---

[2] Exhibit 21-B was a photograph of the clinic on the day the search warrant was executed, not a document purportedly signed by Drivas. (Tr. 926; 1587.) I will assume that by 21B, Drivas meant exhibit 2B which, along with 2C and 2E, was a document purportedly signed by Drivas (Tr. 570–71 (2C); 582–83; 1587 (2E); 452 (admitting all of Exhibit 2, including 2B, though 2B was not specifically discussed during the trial).)

9

context for the statement to which Drivas points. To the extent counsels' affirmation refers to things that happened on the record at or before trial, it comports with my understanding of what occurred.

### D. Failure to Allow Drivas to Testify

Drivas claims that he wanted to testify in his own defense but counsel prevented him from doing so. That would indeed constitute ineffective assistance of counsel, as a criminal defendant's decision to testify belongs to the defendant alone. Counsel, however, state that they discussed the dangers of testifying with Drivas and advised him not to take the stand, but did inform him that the decision to testify was his and his alone, and he elected not to testify. I credit trial counsel's sworn statements over the petitioner's "self-serving and improbable assertions." *Chang*, 250 F.3d at 86. Experienced defense counsel were well aware that the decision to testify belongs to a defendant and would have been unlikely to waive his right to testify over his objection. Moreover, Drivas did not say or do anything during the trial that indicated to me that he wished to testify but was being denied the opportunity. It is reasonable to assume that, had Drivas wished to testify, and had his counsel rested his case over his objection, Drivas would have voiced an objection at that time, or at least requested to speak to his attorney. Drivas did not do so.

### E. The Cross-Examination of Dr. Wahl

During the cross-examination of Dr. Wahl, one of the three attorneys representing Drivas, Lou Diamond, fell ill. Defense counsel state that he had been fighting a pneumonia-like illness during the trial. Another of Drivas's attorneys, Mr. DiChiara, therefore took detailed notes during the cross-examination of Dr. Wahl, anticipating that he may have to finish it if Mr. Diamond was unable to continue. That was indeed the case, and Mr. DiChiara completed the cross-examination of the witness.

Drivas cannot point to any area that went unexplored or question that was left unasked in Dr. Wahl's cross-examination. That one attorney was forced to stop and another took over does not in and of itself constitute ineffectiveness. Since the totality of the cross-examination was completed adequately, his claim of ineffective assistance of counsel fails. Moreover, as Drivas concedes in his reply to counsel's affirmation, since Dr. Wahl primarily testified about the one charge for which Drivas was acquitted, even if the cross-examination had been deficient it would be very unlikely that Drivas could show prejudice.

Finally, it is worth noting that I observed all of Drivas's lawyers throughout their representation of Drivas, and they zealously defended and advocated on behalf of their client throughout the proceedings. I have no reason to doubt the veracity of their affirmations or the competence of their representation.

## CONCLUSION

For the foregoing reasons, Drivas's petition for a writ of habeas corpus is denied on the basis of the existing record, without the need for a further evidentiary hearing. Since petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* relief is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment for respondent.

**SO ORDERED.**

/s/ Nina Gershon
**NINA GERSHON**
**United States District Judge**

Dated: October 31, 2017
Brooklyn, New York

cc: Gustave Drivas, 65285-053
FCI Loretto
Federal Correctional Institution
772 St. Joseph St.
Loretto, PA 15940